## In re Nickerson
*[Cite as 4 AOA 67]*

Case No. 11985
Montgomery County (2nd)
Decided June 13, 1990

*Jeffrey Taylor, 245 East Central, West Carrollton,
Ohio 45449, for Appellee.*

*Dennis L. Patterson, James C. Ellis, 1200 Talbott
Tower, Dayton, Ohio 45402, for Appellant.*

WILSON, J.

By judgment entry filed September 21, 1989, Gary Nickerson was found to be a mentally ill person subject to hospitalization pursuant to R.C. 5122.01(B)(2), (3), and (4). The entry then ordered that Gary Nickerson be committed to the custody of the appellant, the Alcohol, Drug Addiction and Mental Health Services Board for Montgomery County.

The appellant board has appealed from the judgment entry of December 15, 1989 ordering the case closed.

The appellant's "statement of the case" has been adopted by the appellee, Gary Nickerson. The statement of the case provides:

"This appeal involves a construction of Ohio's recently amended civil commitment statute (O.R.C. Chapter 5122). On August 30, 1989, Appellee's mother, Joanne Nickerson, filed with the Probate Court an affidavit stating that the Appellee is an individual who:

"Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior or evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm;
"***

"[w]ould benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself.

"A hearing on that affidavit was held on September 7, 1989 before a Referee of the Probate Court of Montgomery County, Ohio. At the conclusion of that hearing, the Referee issued his report finding clear and convincing evidence that the Appellee was a mentally ill person subject to hospitalization pursuant to Ohio Rev. Code Section 5122.01(B)(2), (3), and (4). The Referee stated that from the diagnosis, prognosis, and projected treatment plan recommended by the physician who testified at the hearing, it was his recommendation that the Appellee be hospitalized at the Dayton Mental Health Center ('DMHC'). The Referee found such placement to be the least restrictive alternative available which was consistent with Appellee's treatment goals and needs. The Referee went on to order that the Appellee be committed to the custody of the Appellant, the Alcohol, Drug Addiction and Mental Health Services Board for Montgomery County ('Board') with placement at the Dayton Mental Health Center for a period not to exceed 90 days from the date of that Order. That Order was filed with the Probate Court on September 7, 1989. Thereafter, the Judge of the Probate Court of Montgomery County, Ohio approved the Report of the Referee by his Judgment entry dated September 21, 1989.

"Prior to the expiration of that 90-day commitment period, and pursuant to Ohio Rev. Code Section 5122.15(H), the Board, on November 22, 1989, filed with the Probate Court of Montgomery County, Ohio an application for continued commitment accompanied by a report from the Appellee's treating psychiatrist stating that the appellee remained an individual who was in need of hospitalization by Court Order. The Court scheduled a hearing on that application for continued commitment for December 5, 1989.

"Some time prior to the date of that hearing, however, the Appellee apparently decided that he did not want to be at DMHC and walked away from the facility. The Appellee did not

appear for the hearing and the Referee continued the hearing until further order of the court. An entry was filed by the Probate Court Judge on December 5, 1989.

"Thereafter, counsel for the Board learned, and, based upon past experience believed, that if the Appellee failed to voluntarily return to the hospital within 14 days, DMHC would discharge the Appellee pursuant to Ohio Rev. Code Section 5122.21 and the Probate Court would then summarily dismiss the commitment. Because it would be contrary to the intents and purposes of the Ohio civil commitment statutory scheme to allow a respondent who has been found to be a threat to himself or others to unilaterally terminate an order of commitment by simply walking away from DMHC, the Board filed a request for a hearing on its application for continued commitment. That request was filed with the Probate Court on December 14, 1989.

"The Court immediately scheduled a hearing the following morning, but the Board was not afforded an opportunity to present any evidence with respect to its application for continued commitment. The Referee started the hearing by calling his own witness, Charlene Longhway, a probate court employee. She testified that she had called DMHC and learned that it would discharge the Appellee from that facility because of his AWOL status. (T.p. 3) Immediately upon hearing that testimony,[1] (and after cross-examination) the Referee dismissed the civil commitment citing Ohio Rev. Code Section 5122.21. (T.p. 5) The Probate Court, without any report and recommendation of the Referee being issued, immediately filed an entry dismissing the commitment. It is from that Order dismissing the civil commitment from which the Board now appeals."

There is one assignment of error:
"THE PROBATE COURT OF MONTGOMERY COUNTY, OHIO ERRED AS A MATTER OF LAW IN DISMISSING THE INVOLUNTARY CIVIL COMMITMENT OF THE APPELLEE, GARY NICKERSON, WHERE THAT DISMISSAL WAS BASED SOLELY UPON THE FACT THAT THE DAYTON MENTAL HEALTH CENTER HAD DISCHARGED THE APPELLEE FROM THAT FACILITY BECAUSE HE, (AN INDIVIDUAL WHICH THAT SAME PROBATE COURT HAD PREVIOUSLY FOUND TO BE A DANGER TO EITHER HIMSELF AND/OR OTHERS) HAD RUN AWAY FROM THAT FACILITY."

We agree with the parties in this case that Chapter 5122 of the Ohio Revised Code was "enacted for the purpose of striking a balance between the interests and rights of the person being committed and protection and safety of the public."

R.C. 5122.21(A) reflects the legislative concern for the rights of involuntary patients by providing that "the chief clinical officer shall as frequently as practicable, and at least once every thirty days, examine or cause to be examined every patient and, whenever he determines that the conditions justifying involuntary hospitalization or commitment no longer obtain, shall *** discharge the patient not under indictment or conviction for crime ***"

Subsection (B) provides that the discharge may be granted "without the consent or authorization of any court."

Off hand we see no reason why the Probate Court's operating policy of dismissing an involuntary commitment is not proper where the reasons for the original commitment no longer exist. However, this issue is not before us in this appeal because Gary Nickerson was not discharged from the hospital pursuant to the provision of R.C. 5122.21. He was discharged from the hospital pursuant to the provision of R.C. 5122.26 which provides in part:

"The chief clinical officer of a hospital may discharge any other patient who has been absent without leave for more than fourteen days."

We agree with the appellant that a person who has been involuntarily committed because of being dangerous to himself and others should not be permitted to terminate the order committing him to the custody of the appellant by going AWOL from the hospital.

We sustain the assignment of error and reverse the order ordering this case closed.

*Judgment reversed.*

WOLFF, P.J., and GRADY, J., concur.

---

[1] It is important to note that Ms. Longhway did confirm that it is the Probate Court's operating policy to immediately dismiss a civil commitment upon receiving notification by DMHC of its discharging a patient from that facility. (T.p. 4)